IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THEODORE HOSAFLOOK,

        Plaintiff,

v.                    //   CIVIL ACTION NO. 1:17CV28
                               (Judge Keeley)

OCWEN LOAN SERVICING, LLC,

        Defendant.

**\*\*SEALED\*\***

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

This case arises from the allegedly abusive loan servicing practices of the defendant, Ocwen Loan Servicing ("Ocwen"). The plaintiff, Theodore Hosaflook ("Hosaflook"), alleges that Ocwen, the servicer of his home mortgage loan, engaged in abuse loan servicing by misrepresenting amounts due, by failing to implement a loan modification agreement, and by refusing to accept his payments (Dkt. No. 1). Pending before the Court are the parties' competing motions for summary judgment. For the reasons that follow, the Court **DENIES** both motions (Dkt. Nos. 61, 63).

## I. BACKGROUND

### A. Factual Background

#### 1. Hosaflook Obtains a Home-Secured Loan

In July 2007, Hosaflook purchased a home located in Morgantown, West Virginia (the "Property"), with a home-secured

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

loan from Countrywide Home Loans. In October 2008, he refinanced the mortgage with Quicken Loans, Inc. ("Quicken Loans") by executing a promissory note ("Note") (Dkt. No. 62-1).[1] Contemporaneously with the execution of the Note, Hosaflook and his wife also executed a deed of trust ("Deed of Trust," collectively with the Note, the "Loan") evidencing a security interest in the Property (Dkt. No. 62-2). After closing, the Loan was assigned to GMAC Mortgage, LLC ("GMAC").

In November 2011, Hosaflook and GMAC entered into a loan modification agreement, which extended the maturity date of the Loan and adjusted the unpaid principal balance due (Dkt. No. 62-3). Then, in February 2013, an assignment of the Deed of Trust was recorded in the Office of the Clerk of Monongalia County, West Virginia, following GMAC's assignment of the Deed of Trust to Ally Bank (Dkt. No. 62-4). During this time, the Loan was held by Ally Bank and serviced by Dovenuehle Mortgage, Inc. See Dkt. No. 62-5.

**2.   Ocwen Begins Serving the Loan**

On May 31, 2013, an assignment of deed of trust was recorded that purportedly assigned the Deed of Trust to Ocwen (Dkt. No. 61-

---

[1] It is not clear from the record whether Hosaflook had defaulted on his mortgage prior to refinancing with Quicken Loans.

2

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

8), and effective June 1, 2013, Ocwen began servicing the Loan on behalf of the Federal National Mortgage Association ("Fannie Mae") (Dkt. No. 61-6).[2] The parties do not dispute that, after Ocwen undertook servicing of the mortgage, Hosaflook remained current on his loan obligations for approximately three months (i.e., from June to August 2013) (Dkt. Nos. 62 at 8-9; 62-11). Ocwen asserts, and the record currently before the Court supports, that Hosaflook made no payments on the Loan between September 2013 and July 2014. See Dkt. Nos. 62-11 at 2-4; 62-12 at 1-3.

### 3.  Ocwen Offers a Trial Period Plan and a Subsequent Permanent Loan Modification

By letter dated July 16, 2014, Ocwen offered Hosaflook a Loan Modification Trial Period Plan ("TPP") to determine if he would be eligible for a permanent loan modification ("TPP Letter") (Dkt. No. 62-13). Under the trial plan, payments of $716.61 were due on the first of the month in August, September, and October of 2014. The TPP Letter provided that "[o]nce the Trial Period Plan is successfully completed, the [L]oan will be eligible for an evaluation for a *permanent* modification." Id. at 2 (emphasis in

---

[2] Notably, the parties dispute whether Ocwen or Fannie Mae is the real party in interest to the Deed of Trust.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

original). It further advised Hosaflook that, until a modification was executed, returned, and implemented, the current terms of the Loan would apply and Hosaflook would continue to receive delinquency notices. Id. at 5-6.

Hosaflook subsequently made trial plan payments of $716.61 on August 8, September 1, and October 2, 2014 (Dkt. No. 62-11 at 4). Despite the indication in the TPP Letter that the Loan would be evaluated for a permanent modification at the conclusion of the three-month trial period, Ocwen did not prepare or send to Hosaflook any permanent loan modification documents until March 23, 2015, nearly six months after Hosaflook had completed his trial period payments ("March 23 Letter," Dkt. No. 62-15).[3] In the March 23 Letter, Ocwen offered Hosaflook a permanent loan modification at an interest rate of 4.63% and a monthly payment of $863.18. Id. On March 31, 2015, however, an Ocwen representative advised Hosaflook

---

[3] A "Comments Log" submitted by Ocwen reflects that during a December 17, 2014 telephone call, an Ocwen representative "advised [Hosaflook] to continue BAU until modification is completed" (Dkt. No. 62-14). In its motion for summary judgment, Ocwen seemingly contends that this entry reflects its representative's instruction to Hosaflook to "keep making payments in the same amount as his trial period plan until the loan modification underwriting was complete" (Dkt. No. 62 at 5-6). Despite this purported instruction by Ocwen, Hosaflook stopped making payments under the trial plan after November 2014.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                          1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

by telephone that the interest rate of 4.63% reflected in the March 23 Letter was incorrect, and that the correct rate and corresponding monthly payment was 4.00% and $863.18, respectively (Dkt. No. 62-14 at 3).

Thereafter, on April 9, 2015, Ocwen sent correspondence to Hosaflook stating that he had been approved for a permanent loan modification at an interest rate of 4.00% with a first modified monthly payment in the amount of $806.92 due on November 1, 2014, which was almost six months in the past ("April 9 Letter," Dkt. No. 62-16). The April 9 Letter advised Hosaflook that, "to accept this offer[,] you may return the modification agreement along with payment of $806.93, which will be applied towards your first payment after the modification executes." Id. at 2. It further advised that

> [i]f executing an ink signature (paper), enclosed are
> multiple copies of the Modification Agreement; please
> retain one copy for your records and return all original
> Modification Agreements. The signed Modification
> Agreement must be received in our office on or before
> 4/23/2015.
>
> ...
>
> If you do not send the Modification agreements by the
> above due date, you must contact us if you still wish to
> have your loan modified.

5

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Id. at 3 (emphasis in original).

### 4.    Ocwen Denies the Permanent Loan Modification

On April 20, 2015, Hosaflook emailed and faxed signed copies of the permanent modification agreement included with the April 9 Letter (Dkt. No. 62-17). Despite its receipt of the documents, Ocwen rejected the loan modification on April 21, 2015, because it had not received a hard copy of the original documents, as required by the April 9 Letter. Id. at 1; Dkt. No. 62-14 at 5. Additionally, Ocwen's quality control rejected the modification agreement on the same day because Hosaflook's wife, as a signatory on the Deed of Trust, had not signed the documents. Id. at 4.

Apparently unaware that Ocwen had rejected the modification agreement, Hosaflook began making monthly payments of $806.93, which he submitted in May and June of 2015 (Dkt. No. 64-Ex I). Meanwhile, Ocwen unsuccessfully attempted to contact Hosaflook by telephone between April 21 and July 6, 2015, purportedly to discuss the rejection of the modification agreement and the status of his account (Dkt. Nos. 62 at 7; 62-14 at 6-11). Finally, on or around July 7, 2015, Hosaflook received a written notice of default from Ocwen ("Notice") informing him that he was in default on the Loan, and that he must submit a total of $17,180.92 by August 7, 2015

6

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

(Dkt. No. 63-17 at 2-3). The Notice further advised him that his "[f]ailure to bring [his] account current may result in [Ocwen's] election to exercise [its] right to foreclose" on the Property. Id. at 3.

During a telephone call on July 8, 2015, an Ocwen representative informed Hosaflook that Ocwen would "work to have . . . [the] modification denial reversed due to the errors with Ocwen process," and that she would request that the modification documents be re-sent to him (Dkt. No. 62-14 at 12). After the representative's request was granted, Ocwen mailed a second copy of the loan modification documents to Hosaflook on July 13, 2015 (Dkt. No. 63-15 at 46). Within days after receiving the documents, Hosaflook and his wife, Alice, signed and notarized the July 2015 version of the loan modification agreements and, as instructed, returned an original hard copy to Ocwen, as well as copies by email and fax, on July 22, 2015 (Dkt. Nos. 62-14 at 13; 63-15 at 47-48).

According to its own records, Ocwen received the hard copy of the documents by mail on July 24, 2015 (Dkt. No. 62-14 at 14)(see e.g., "Modification agreement received from customer by Record Services and is under review"; "Freddie Mac Original Mod Agreement Received; "Non-HAMP agreement received for QC"). Nevertheless,

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                      1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

despite these entries acknowledging its receipt of the original documents, Ocwen rejected the modification agreement just hours later, purportedly because "Hardcopy of the agreement not received. Agreement is a photocopy and cannot be accepted. QC date: 7/24/2015." Id. An additional, and simultaneously logged, entry states, "Agreement QC cancelled. Received is Freddie agreement; Loan already rejected." Id.

On or around July 25, 2015, apparently unaware that Ocwen had already rejected the July version of the modification agreement, Hosaflook made a payment of $806.93 for the month of August 2015 (Dkt. No. 63-16 at 3). During a telephone call on August 5, 2015, Ocwen advised Hosaflook that his modification agreement had been rejected (Dkt. No. 63-15 at 51). Ocwen further declared the Loan in default, with $16,429.89 purportedly past due under the original loan terms. Id. at 50. Because it deemed Hosaflook to be in default, Ocwen purportedly refused to accept any further regular monthly payments under either the original or modified loan terms, and accordingly, arrearages continued to accrue. See, e.g., Dkt. Nos. 69 at 6 ("Any regular payments received after the 90th day of delinquency should be returned to the customer. After the 90th day,

8

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                     1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

the customer would have to reinstate the account in order for a payment to be accepted").

### 5.   Ocwen Reverses the Loan Modification Denial

Almost two months later, and after a series of calls between Ocwen and Hosaflook, ombudsman Noel Kurt ("Kurt") advised Hosaflook on October 27, 2015, that the "denial of modification [was] being reversed," and that, once the reversal was complete, Ocwen would "provide [the] payment amount according to [the] modified terms" of the Loan (Dkt. No. 62-14 at 16). Three days later, on October 30, 2015, Ocwen formally processed the reversal, approved the loan modification, and countersigned the agreement. Id.; Dkt. No. 62-19. On that same day, Hosaflook made a payment of $806.93 (Dkt. Nos. 62 at 8; 62-11 at 5).

A few days later, during a phone call on November 4, 2015, Kurt informed Hosaflook that his account was due for nine missed payments (Dkt. No. 62-14 at 17). During the month of November 2015, Hosaflook requested additional assistance, which Ocwen denied, stating that investor guidelines did not permit a repayment plan for longer than six months. Consistent with its November 2015 representations, by letter dated December 16, 2015, Ocwen informed Hosaflook that his account was now due for ten (10) missed payments

9

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

between March 1 and December 1, 2015, in the amount of $7,443.01. It further informed him that, because the account was over 89 days past due, "Ocwen must receive the complete reinstatement amount. If a single payment is remitted, it will be returned as insufficient to cure the default." Id. at 84; Dkt. No. 62-21.

A few weeks later, in January of 2016, Ocwen, through its Office of Consumer Ombudsman, advised Hosaflook by telephone call that while he was not eligible to receive another loan modification at that time because less than a year had passed since the effective date of the last loan modification, he could potentially apply for loss mitigation assistance as soon as March 1, 2016 (Dkt. No. 62-14). As advised, on April 13, 2016, Hosaflook reapplied for assistance, once again submitting a loan modification application to Ocwen (Dkt. Nos. 62-14 at 20; 62-22). On April 18, 2016, Ocwen denied Hosaflook's third--and final--loan modification application, apparently because he had already "received the maximum number of modifications permitted," and because Ocwen had "determined that [his] financial hardship [was] not a temporary one," as the loan was greater than 180 days delinquent (Dkt. No. 62-14 at 21). See also Dkt. No 62-23.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Hosaflook thereafter appealed the denial of his loan
modification, which Ocwen denied on May 6, 2016. Ocwen advised him
that, following a review of the appeal and the information he had
provided, it was "unable to approve [his] loan for any of [its]
modification options" (Dkt. No. 63-15 at 91). By the same
correspondence, Ocwen further advised that it had "conditionally
approved [Hosaflook's] application to be entered into a marketing
period for a short sale." By June 8, 2016, Ocwen had initiated
foreclosure proceedings on the Property (Dkt. No. 63-15 at 97).

B.  **Procedural Background**

On January 24, 2017, Hosaflook sued Ocwen in the Circuit Court
of Monongalia County, West Virginia (Dkt. No. 1-2), asserting
statutory claims for Misrepresentation, Unconscionable Conduct,
Illegal Fees, Unlawful Threats, and Refusal to Apply Payments in
violation of the West Virginia Consumer Credit and Protection Act,
W. Va. Code §§ 46A-2-101, et seq. ("WVCCPA"), as well as common law
claims for Tortious Interference with Contract, Fraud, and Breach
of Contract. Id. at 11–22. On February 23, 2017, Ocwen removed the
case to this Court based on diversity jurisdiction (Dkt. No. 1).

11

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When cross-motions for summary judgment are submitted to a district court, . . . the facts relevant to each must be viewed in the light most favorable to the non-movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003); see also Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson,

12

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

### III. DISCUSSION[4]

Hosaflook seeks summary judgment on his claims for Misrepresentation and Refusal to Apply Payments in violation of the WVCCPA (Counts One and Five), as well as his claim for Breach of Contract under the loan modification agreements (Count Nine) (Dkt. No. 63). Because Ocwen seeks summary judgment on all counts (Dkt. No. 61), and for the sake of consistency, the Court will address each claim, in turn, in the order raised in Ocwen's motion.

**A.   Tortious Interference with Contract - Count Seven**

In **Count Seven** of the complaint, Hosaflook alleges that he "entered into a loan contract, secured by his home, by which [he] was to make monthly payments for the benefit of the [L]oan's owner and to ensure against foreclosure" (Dkt. No. 1-1 at 19-20). He

---

[4] As appropriate, the facts relevant to each cross-motion for summary judgment are viewed in the light most favorable to the non-moving party. Mellen, 327 F.3d at 363.

13

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                          1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

further alleges that Ocwen, as the Loan's servicer, intentionally interfered with his contractual relationship with the Loan's holder by refusing [his] payments," and by "delaying implementation of [a] loan modification agreement" intended to bring him current on his obligations under the Loan. Ocwen's purported interference allegedly resulted in "substantial and unaffordable arrears accru[ing] on the [L]oan . . . which [Hosaflook] is unable to pay[,] such that loss of the home is inevitable." Id. at 19.

Under West Virginia law, to establish a prima facie case of tortious interference with a contract, a plaintiff must show (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. Syl Pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Virginia, 672 S.E.2d 395, 403 (W. Va. 2008) (quoting Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166 (W. Va. 1983)). Thus, "in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship." Hatfield, 672 S.E.2d 395 at 403.

14

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

In its motion for summary judgment, Ocwen argues that Hosaflook's claim for tortious interference with a contract fails as a matter of law because Ocwen, as the Loan's servicer, is not a party "outside of the contractual relationship or expectancy" (Dkt. No. 62 at 10-11). In response, Hosaflook contends that there are triable issues of fact as to this claim, namely Ocwen's relationship to the contract (Dkt. No. 88 at 7-10).

As an initial matter, the parties do not dispute that the Loan is owned by Fannie Mae, or that Ocwen is the current servicer of the Loan on behalf of Fannie Mae (Dkt. No. 1-1 at 19). However, despite Ocwen's contention that it is an agent of Fannie Mae,[5] which remains the party to the loan contract (Dkt. No. 62 at 10), Hosaflook points out that Fannie Mae's "Servicing Guide" explicitly provides that a servicer, such as Ocwen, "services Fannie Mae mortgage loans as an independent contractor and not as an agent, assignee, or representative of Fannie Mae" (Dkt. No. 88-8 at 2). Thus, there are material facts in dispute regarding the nature of

---

[5] In its memorandum, Ocwen alternatively contends that, via assignment, it is the actual party to the Deed of Trust (Dkt. No. 62 at 11). As argued by Hosaflook, these varying assertions lend further support to the conclusion that Ocwen's relationship to the contract remains in dispute.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Ocwen's relationship to the contract at issue, as well as the existence of any agency relationship between Ocwen and Fannie Mae.

Even if Ocwen had been acting as an agent of Fannie Mae, that fact alone would not preclude Ocwen's potential liability for tortious interference *if* Ocwen acted outside the scope of the agency relationship in its dealings with Hosaflook. See Coleman v. JP Morgan Chase Bank, N.A., No. 3:14-cv-0183, 2014 WL 1871726 (S.D.W. Va. May 8, 2014) ("[E]ven if it were undisputed that [the loan servicer] was a party to the contract, [it] could nonetheless face liability for tortious interference if it acted outside the scope of its existing relationship with Freddie Mac."); Hatfield, 672 S.E.2d at 403 (indicating that a tortious interference claim could have survived summary judgment if plaintiffs had presented evidence that the actors "were acting outside the scope of their employment"); see also Nash v. Green Tree Servicing, LLC, 943 F.Supp.2d 640, 647-48 (E.D. Va. 2013) (denying summary judgment on tortious interference claim against loan servicer, where mortgage holder was Fannie Mae).

Here, the evidence is in dispute regarding whether Ocwen was acting outside the scope of its purported agency relationship by, among other allegations, failing to comply with Fannie Mae's

16

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

guidelines in servicing the Loan. For example, Fannie Mae's Servicing Guide provides that

> the servicer must have sufficient staffing levels and properly trained staff (including third-party providers of its outsourced servicing activities) to carry out all aspects of their servicing duties in accordance with the timing requirements of the Servicing Guide, maintain acceptable performance standards, and provide borrowers with assistance when it is requested.

Dkt. No. 88-8 at 2. Despite the Guide's directives regarding the provision of assistance upon request, Hosaflook has provided evidence that Ocwen failed to follow Fannie Mae's servicing requirements by refusing to provide him with a repayment plan or other assistance after his loan modification was finally completed. As he persuasively argues, Ocwen's alleged failure to comply with the holder's servicing requirements purportedly left him in substantial arrears that could not be cured; if true, this would have caused harm to both Hosaflook *and Fannie Mae* through the financial loss associated with foreclosure. In addition, and as discussed more fully later in this Opinion, disputes of material fact remain regarding whether Ocwen suppressed essential information from Hosaflook, and whether it intentionally misrepresented the status of his account to him. In turn, these disputed issues, if resolved in favor of Hosaflook, raise the

17

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

related question of fact as to whether, in so doing, Owen was operating without authority from its purported principal, Fannie Mae.

Therefore, because genuine issues of material fact regarding Hosaflook's claim for tortious interference are in dispute, the Court **DENIES** Ocwen's motion for summary judgment as to **Count Seven**.

## B. Breaches of Contract

### 1. Loan Modification - Count Nine

Both parties have moved for summary judgment on **Count Nine**, styled in the complaint as a claim for "Breach of Contract (Loan Modification)." In his motion for summary judgment, Hosaflook asserts that he is entitled to summary judgment on this claim "for breaches of both the trial period contract and the permanent modification contract." (Dkt. No. 64 at 17).

In **Count Nine**, Hosaflook alleges that Ocwen "made [Hosaflook] an offer that it would permanently modify his loan if [he] accepted the offer, made his trial payments as instructed, and the loan qualified for permanent modification" (Dkt. No. 1-1 at 22). Despite Hosaflook's purported acceptance and performance, Ocwen allegedly breached the agreement "by failing to timely and appropriately provide and implement the permanent modification," and by "instead

18

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

declaring [Hosaflook] in arrears and refusing to accept the
modified payments." Thus, Hosaflook was damaged through the accrual
of arrears and imminent foreclosure on his home. Id.

    With respect to Hosaflook's claim that Ocwen breached the
trial period agreement, this Court has consistently stated:

>    Under West Virginia law, a prima facie breach of contract
>    claim requires the plaintiff to allege four elements: (1)
>    that there is a valid, enforceable contract; (2) that the
>    plaintiff has performed under the contract; (3) that the
>    defendant has breached or violated its duties or
>    obligations under the contract; and (4) that the
>    plaintiff has been injured as a result.

Corder v. Antero Res. Corp., No. 1:18CV30, -- F.Supp.3d --, --,
2018 WL 2925128, at *5 (N.D.W. Va. June 11, 2018)(citing KBS
Preowned Vehicles, LLC v. Reviva, Inc., No. 1:13cv138, 2014 WL
12591890, at *2 (N.D.W. Va. Mar. 26, 2014)); Dan Ryan Builders,
Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013 WL 5352844,
at *11 (N.D.W. Va. Sept. 24, 2013); see also Charleston Nat'l Bank
v. Sims, 70 S.E.2d 809, 813 (W. Va. 1952) (quoting Jones v.
Kessler, 126 S.E. 344 (W. Va. 1925)).

    Ocwen argues that Hosaflook's breach of contract claim fails
based on the plain language of the TPP Letter (Dkt. No. 62 at 11-
13). In response, and in his own motion for summary judgment on
this claim, Hosaflook argues that Ocwen breached the trial period

19

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

contract, first, by failing to provide him with a permanent modification immediately upon his completion of three trial payments, and, further, by failing to provide permanent modification terms "at any point comparable to the terms offered" in the contract (Dkt. Nos. 88 at 10-11; 64 at 18).

The TPP Letter "offer[ed] [Hosaflook] a **Loan Modification Trial Period Plan**" and advised him that "[o]nce the Trial Period Plan is successfully completed, the [L]oan will be eligible for an evaluation for a *permanent* modification" (Dkt. No. 62-13 at 2) (emphasis in original). Citing this language, Ocwen argues that the TPP Letter does not constitute an agreement between the parties guaranteeing a permanent loan modification; rather, it states only that Ocwen would accept trial period payments "to determine if [Hosaflook] had the means to qualify for a permanent streamline modification, and if he did, he would be <u>evaluated</u> for a permanent modification" (Dkt. No. 62 at 12) (emphasis in original). Thus, according to Ocwen, it could not have breached the TPP Letter because it undisputedly 1) accepted Hosaflook's trial period payments in August, September and October of 2014, and 2) subsequently evaluated him for a permanent loan modification, as contemplated by the Letter. <u>Id.</u> at 13.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Notably, in addition to the language cited by Ocwen, the TPP Letter further explains, in its "Question and Answer" portion, the process for obtaining permanent loan modification following the successful completion of a trial period plan:

**Q. When will I know if the loan can be modified permanently and how will the modified loan balance be determined?**

**If the loan continues to remain eligible for the permanent modification, <u>once all Trial Period Plan payments are received on time</u> and you return to us two copies of a modification agreement with your signature, we will sign one copy and send it back to you so that you will have a fully executed modification agreement detailing the terms of the modified loan.** Any difference between the amount of the Trial Period Plan payments and the regular mortgage payments will be added to the balance of the loan along with any other past due amounts as permitted by the loan documents. While this will increase the total balance of the loan, it should not significantly change the amount of the modified mortgage payment.

(Dkt. No. 62-13 at 5) (emphasis added).

Here, it is undisputed that Ocwen did not provide Hosaflook with any permanent loan modification documents for him to execute and return until at least March of 2015; nor did it provide him with the correct version of the documents until April 2015, despite his acceptance of--and performance under--the trial period

21

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

agreement almost six months earlier (_i.e._, his completion of three trial period payments by October of 2014).

Consistent with his belief that, upon the submission of his final trial period payment, Ocwen would provide with him with copies of a permanent modification agreement, Hosaflook has provided testimony from Ocwen's corporate representative that, "generally[,] . . . the modification documents [would be] available upon completion of the [trial] plan" (Dkt. No. 88-1 at 6).  In addition, Hosaflook has submitted evidence that an Ocwen representative informed him on December 17, 2014, that he "did complete [his] trial period, that's correct," and that he "should be getting final documents, that is also correct." During the same telephone call, the Ocwen representative further advised Hosaflook to "add . . . an additional 20 days to this. So that I can get you an agreement" (Dkt. No. 79 at 14-15). Therefore, based on the evidence in the record, Hosaflook has submitted sufficient evidence to create a question of fact as to whether Ocwen breached its obligations under the trial period agreement by failing to provide him with permanent modification documents immediately upon or shortly after the conclusion of the three-month trial period.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Finally, Hosaflook alleges that Ocwen further breached the trial period agreement by failing to provide permanent modification terms comparable to the terms offered in the TPP Letter. According to the TPP Letter,

> [a]ny difference between the amount of the Trial Period Plan payments and the regular mortgage payments will be added to the balance of the loan along with any other past due amounts as permitted by the loan documents. While this will increase the total balance of the loan, **it should not significantly change the amount of the modified mortgage payment.**

(Dkt. No. 62-13 at 5) (emphasis added). Notwithstanding that statement, Ocwen contends that the TPP Letter further advised that, if a modification agreement was implemented, the new monthly payment would include an esrow for property taxes, hazard insurance, and other escrowed expenses which may increase the monthly payment. Id. at 8.

While Hosaflook's monthly payment under the trial period plan was $716.61, his regular monthly payment under the permanent modification agreement he signed was $806.93, almost $100 greater than the amount under the trial plan. Notably, neither party has explained why the amount of the payment owed under the permanent modification agreement increased, nor have they submitted any evidence that the escrowed expenses mentioned in the TPP Letter

23

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                          1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

were, or were not, actually included in Hosaflook's increased monthly payment. Thus, from the record before it, the Court is unable to conclude that either party is entitled to summary judgment on this claim.

Turning to Hosaflook's claim for breach of the permanent modification agreement, as also alleged in **Count Nine**, Ocwen argues that it did not breach that agreement because "[Hosaflook] did not pay as required and did not furnish sufficient funds when Ocwen implemented the . . . agreement" (Dkt. No. 62 at 12). In response, Hosaflook states that the "only reason [he] did not pay on this agreement was that [Ocwen] refused to permit him to pay, and instead failed to honor the agreement" (Dkt. No. 88 at 10) (emphasis omitted). Genuine disputes of material fact exist as to whether Ocwen refused to accept or apply any payments from Hosaflook during the relevant time period, which precludes summary judgment on this claim.  Therefore, for the reasons discussed, the Court **DENIES** both parties' motions for summary judgment on **Count Nine**.

2.   **Deed of Trust - Count Eight**

**Count Eight** asserts a claim for breach of contract based on Ocwen's alleged breaches of the Deed of Trust and its duty to

24

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

exercise its discretion in good faith and fair dealing (Dkt. No. 1-1 at 16-17)[6]. Specifically, Hosaflook alleges that Ocwen breached its duties under the Deed of Trust by: 1) refusing Hosaflook's payments and applying payments incorrectly to purported amounts due; 2) assessing and threatening to assess unauthorized default and attorney fees to his account; 3) failing to comply with applicable law, including obligations under consent orders and federal servicing regulations; 4) refusing Hosaflook's attempts at providing payments to the account; 5) refusing to provide him the assistance for which he qualified; and 6) placing him in arrears through a loan modification offer and then pursuing foreclosure. Id. at 21.

Ocwen argues that Hosaflook's claim for breach of contract fails because it is precluded by Hosaflook's own first material breach of the Deed of Trust (Dkt. No. 62 at 13-15). More particularly, Ocwen contends that Hosaflook is "barred from enforcing the terms of the Loan Contract against Ocwen because of his multiple defaults and breaches of the Note and Deed of Trust."

---

[6] Hosaflook asserts this theory in the alternative to his tortious interference claim, depending on what entity the jury decides is the real party in interest to the Deed of Trust.

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Id. at 14. In support of its argument, Ocwen cites Hosaflook's
recurring failure to make his monthly payments under the Deed of
Trust and the Note, specifically between August 2013 and July 2014,
in December 2014, and in January and March 2015. Id.

It is well-established that "West Virginia law prevents a
party who first breaches a mutual and dependent contract from
recovering damages attributable to a subsequent breach by the other
party." Milner Hotels, Inc. v. Norfolk and W. Ry. Co., 19 F.3d
1429, at *2 (4th Cir. 1994) (per curiam) (citing Teller v. McCoy,
253 S.E.2d 114, 126 (W. Va. 1978)). For the so-called "first breach
rule" to apply, however, the breach must be material. See id. In
turn, "a material breach is a failure to do something that is so
fundamental to the contract that the failure to perform that
obligation defeats an essential purpose of the contract." Mullins
v. GMAC Mortg., LLC, No. 1:09-CV-00704, 2011 WL 1298777, at *3
(S.D.W. Va. Mar. 31, 2011) (quoting Kersey v. PHH Mortgage Corp.,
682 F.Supp.2d 588, 596–97 (E.D. Va. 2010)).

Here, Hosaflook contends that Ocwen's reliance on the first
breach rule is misplaced because his "delinquency is not a material
breach." (Dkt. No. 88 at 13). "Deeds of trust, by their very
nature, 'contemplate the possibility of non-payment.'" Weller v. JP

26

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

Morgan Chase Bank, Nat'l Ass'n, No. 3:16-CV-110, 2017 WL 3581099, at *5 (N.D.W. Va. Aug. 18, 2017) (Groh, J.) (quoting Mathews v. PHH Mortg. Corp., 724 S.E.2d 196, 200 (Va. 2012)). "Because a deed of trust permits the trustee to sell the parcel to protect the interest of the lender-beneficiary upon the borrower's breach by non-payment, the fact of non-payment of the note does not defeat an essential purpose of the contract." Id. (internal quotation and citations omitted). In other words, Hosaflook's inability to make his mortgage payments is a situation expressly contemplated by the contractual provisions at issue in the Deed of Trust, namely those relating to reinstatement of the Loan, foreclosure proceedings, and default fees. (Dkt. No. 88 at 13).

Accordingly, the Court concludes that the first breach rule does not apply to preclude Hosaflook's claim against Ocwen for alleged breaches of the Deed of Trust. It therefore **DENIES** Ocwen's motion for summary judgment as to **Count Eight**.

**C.    Fraud - Count Six**

In **Count Six** of the complaint, Hosaflook alleges that Ocwen "misrepresented that it would provide [him] with a timely permanent loan modification, misrepresented that he could not make payments, and suppressed that [it] was not appropriately reviewing the

27

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

application of or following industry standards in the servicing of
the account" (Dkt. No. 1-1 at 18). He further alleges that these
misrepresentations and suppressions were material, and he
reasonably relied on them "when he made the modified loan payments,
stopped making payments when so instructed, otherwise submitted
documentation to [Ocwen], and did not pursue alternatives to
foreclosure . . . such as placing his home on the market before the
significant arrears accrued." Id. at 18-19.

Ocwen argues that Hosaflook's fraud claim is barred by the
economic loss rule or the related gist of the action doctrine,
because his claims "arise purely out of the contractual
relationship" between Ocwen and Hosaflook (Dkt. Nos. 62 at 15-17;
99 at 7-8). In response, Hosaflook asserts that the gist of the
action doctrine does not bar his claim because Ocwen's allegedly
fraudulent conduct "was wholly separate from any contractual
obligations" (Dkt. No. 88 at 14-17).

West Virginia law prevents parties from "recasting" contract
claims as tort claims. See Covol Fuels No. 4, LLC v. Pinnacle
Mining Co., LLC, 785 F.3d 104, 115 (4th Cir. 2015). Under this so-
called "gist of the action" doctrine, recovery in tort is barred in
any of the following circumstances: "(1) where liability arises

28

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

solely from the contractual relationship between the parties; (2)
when the alleged duties breached were grounded in the contract
itself; (3) where any liability stems from the contract; and (4)
when the tort claim essentially duplicates the breach of contract
claim or where the success of the tort claim is dependent on the
success of the breach of contract claim." Gaddy Eng'g Co. v. Bowles
Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (W. Va. 2013)
(quoting Star v. Rosenthal, 884 F. Supp. 2d 319, 328-29 (E.D. Pa.
2012)).

Accordingly, in order to maintain a cause of action sounding
in tort, a plaintiff must establish the existence of a legal duty
independent from any contractual duty. Corder v. Antero Res. Corp.,
No. 1:18CV30, 2018 WL 2925128, at *10 (N.D.W. Va. June 11, 2018)
(citing Lockhart, 567 S.E.2d at 624) ("[A plaintiff] cannot
maintain an action in tort for an alleged breach of a contractual
duty."). In other words, a plaintiff may not maintain a separate
tort claim if the defendant's "obligations are defined by the terms
of the contract" between the parties. Gaddy, 746 S.E.2d at 577. On
the other hand, "if the contract is merely 'collateral' to a claim,
the gist of the action doctrine does not bar the claim." Goldstein

29

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

v. Elk Lighting, Inc., No. 3:12-CV-168, 2013 WL 790765, at *3 (M.D.
Pa. Mar. 4, 2013).

A careful review of the allegations in the case, as well as
the record, makes clear that the success of Hosaflook's fraud claim
may not depend on proving that Ocwen breached its obligations under
a contract. For example, Hosaflook alleges that Ocwen
misrepresented to him that it would bring him current on his
account, and otherwise appropriately service the Loan, when it had
no intention of doing so. Whether Hosaflook can establish that
Ocwen acted improperly by making such representations would not be
governed by the terms of any contract. In addition, even where a
contract exists between parties, "[a]n exception to the gist of the
action doctrine is fraud based 'on expression[s] of intention' if
a party lacks such intent 'to fulfill the promise at the time it
was made . . . .'" Soyoola v. Oceanus Ins. Co., 986 F. Supp. 2d
695, 707-08 (S.D.W. Va. 2013) (quoting Croston v. Emax Oil Co., 464
S.E.2d 728, 732 (W. Va. 1995)). Thus, despite Ocwen's contention to
the contrary, the fraud alleged in this case does not arise solely
from the contractual relationship between the parties. And, when
viewed in the light most favorable to Hosaflook, the evidence is

30

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

sufficient to create factual questions as to whether Ocwen violated its common law duty not to commit fraud.

Moreover, and as already discussed, the very *existence* of a binding contract between the parties remains in dispute, with Ocwen asserting that it is the loan servicer, and not the holder of the loan. As argued by Hosaflook, a party may present alternate and conflicting theories for relief where underlying facts remain in dispute. See Fed. R. Civ. P. 8(d)(2), (d)(3); Compton v. O'Bryan, No. 2:16-CV-09298, 2018 WL 813443, at *6 (S.D.W. Va. Feb. 9, 2018) ("[A]ccording to the Federal Rules of Civil Procedure, alternative theories of relief "may properly be pleaded, and if sufficiently supported by evidence, analyzed by the trier of fact as alternative grounds of relief."). Therefore, because the existence of the contract is in dispute, Hosaflook may present alternative theories of relief to the jury.

Finally, to the extent that Ocwen contends that Hosaflook's fraud claim is barred by the doctrine of equitable estoppel because Hosaflook "engaged in a series of defaults on his mortgage payment . . . and then attempted to blame his delinquency on Ocwen" (Dkt. No. 62 at 17), the Court rejects this underdeveloped argument.

31

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

For these reasons, the Court **DENIES** Ocwen's motion for summary judgment as to **Count Six**.

**D.    West Virginia Consumer Credit and Protection Act**

**1.    Misrepresentations and Unconscionable Conduct - Counts One and Two**

Counts One though Five of the complaint assert various claims for illegal debt collection practices under the WVCCPA. Both parties seek summary judgment on **Count One**, which alleges that Ocwen used "fraudulent, deceptive, or misleading representations or means to collect or attempt to collect claims or to obtain information concerning [Hosaflook] . . . including misrepresenting the amounts owed and the status of the account," in violation of section 46A-2-127 of the West Virginia Code (Dkt. No. 1-1 at 15). Ocwen also seeks summary judgment on **Count Two**, where Hosaflook alleges that Ocwen "used unfair or unconscionable means in an effort to collect a debt . . . including by refusing to implement the modification agreement, refusing payments, and refusing assistance that would address the damage caused by its own misconduct," in violation of section 46A-2-128 (Dkt. No. 1-1 at 16).

32

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                      1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Ocwen argues that Hosaflook's misrepresentation and unconscionable conduct claims fail as a matter of law "because conflicts arising from loss mitigation are not considered debt collection" under the WVCCPA (Dkt. No. 62 at 18-19). In the alternative, Ocwen argues that, to the extent these claims relate to Hosaflook's loan modification, Ocwen has no liability because it timely cured any error. Id. at 20-21. In response, Hosaflook contends that the conduct alleged is covered by the statutory provisions at issue, and that Ocwen's argument to the contrary has been rejected by other courts (Dkt. No. 88 at 19-20). He further moves for summary judgment on his misrepresentation claim "for those violations that can be demonstrated by the undisputed evidence in the record" (Dkt. No. 64 at 12-16). The Court will take up each of these contentions in turn.

With respect to Ocwen's argument that the claims asserted in **Counts One** and **Two** cannot amount to violations of the debt collection provisions of the WVCCPA, section 46A-2-122(c) defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code § 46A-2-122(c). And, while the Court acknowledges that "not all

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

activities occurring in connection with servicing a mortgage loan
[equate] with debt collection," Spoor v. PHH Mortg. Corp., No.
5:10CV42, 2011 WL 883666, at *7 (N.D.W. Va. Mar. 11, 2011) (Stamp,
J.) (holding that the "mere considering [plaintiff's] request for
[a loan modification] is not collecting on a debt")(emphasis
added), it finds persuasive the following analysis of the relevant
statutory provisions:

> § 46A-2-127 applies to both 'misrepresentations made in
> collecting a debt' and 'misrepresentations ... [made]
> when obtaining information on a customer.' Therefore,
> allegations that a financial institution misrepresented
> to the borrower that it would reconsider a loan
> modification and, thereby, obtained additional financial
> information from the borrower, are sufficient to state a
> claim. Id. Likewise, the Court finds the allegations are
> sufficient to state a claim that Defendant used "unfair
> or unconscionable means to collect or attempt to collect
> any claim" pursuant to West Virginia Code § 46A-2-128, in
> part.

Ranson v. Bank of Am., N.A., No. 3:12-5616, 2013 WL 1077093, at *9
(S.D.W. Va. Mar. 14, 2013) (quoting Koontz v. Wells Fargo, N.A.,No.
2:10-cv-00864, 2011 WL 1297519 (S.D.W. Va. Mar. 31, 2011)).

Here, as in Ranson and Koontz, Hosaflook has clearly alleged
that Ocwen used fraudulent, deceptive, or misleading
representations to collect the debt or obtain information about
him, and that it used unfair or unconscionable means in an effort

34

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

to collect the debt (Dkt. No. 1-1 at 15-16). Further, to the extent that Ocwen states that "there was no information gathered from [Hosaflook]" during the loan modification process, the record establishes that genuine issues of material fact exist regarding whether Ocwen obtained, or attempted to obtain, additional financial information from Hosaflook.

Next, Ocwen contends that, to the extent Hosaflook's WVCCPA claims relate to its conduct in implementing the loan modification agreement, Ocwen "corrected any error by reversing its loss mitigation denial prior to the receipt of a written notice" (Dkt. No. 62 at 20). As observed by Hosaflook, this defense would ostensibly not apply to his claims related to Ocwen's misrepresentations or unconscionable conduct that did *not* relate the permanent loan modification, nor would it apply to his claims regarding Ocwen's alleged threats of improper fees, refusal to apply payments, or any conduct after October 31, 2015, when it implemented the modification agreement (Dkt. No. 88 at 20). Moreover, genuine disputes of material fact exist regarding Ocwen's purported cure of any error related to its implementation of the loan modification, thereby precluding summary judgment on this basis.

35

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

Finally, with respect to Hosaflook's motion for summary judgment as to certain alleged violations of section 46A-2-127, questions of material fact exist as to whether Ocwen misrepresented the amounts due on Hosaflook's account and whether it otherwise misrepresented the status of his account or the availability of assistance to him. Ultimately, it will be for the jury to determine whether Ocwen, through its billing statements, delinquency and default notices, and other written communications to Hosaflook, violated section 46A-2-127.

Therefore, for the reasons discussed, the Court **DENIES** both parties' motions for summary judgment on **Count One** and **DENIES** Ocwen's motion for summary judgment on **Count Two**.

## 2.    Illegal Fees, Unlawful Threats, and Refusal to Apply Payments - Counts Three, Four, and Five

**Count Three** alleges that Ocwen "assessed or threatened to assess fees to the account that are not authorized by contract or law, including threatening to assess attorneys' fees," in violation of sections 46A-2-115, -124, -127, and 128 (Dkt. No. 1-1 at 17). In **Count Four**, Hosaflook alleges that Ocwen made unlawful threats in collecting on the Loan by "falsely reporting [him] of failing to pay to the credit reporting bureaus, threatening foreclosure when

36

HOSAFLOOK V. OCWEN LOAN SERVICING, LLC                    1:17CV28

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]

it had no authority to do so, and threatening the assessment of fees that it had no right to assess of collect," in violation of section 46A-2-124 (Dkt. No. 1-1 at 17). Finally, in **Count Five**, Hosaflook alleges that Ocwen "refused to accept or apply [his] payments to his account," in violation of  section 46A-2-115 (Dkt. No. 1-1 at 18).

As the parties' competing motions for summary judgment, their memoranda in support, and the accompanying exhibits demonstrate, genuine disputes of material fact exist as to **Counts Three**, **Four**, and **Five**, such that neither party is entitled to summary judgment on these claims. In particular, whether Ocwen assessed or threatened to assess illegal fees, whether it falsely reported the status of Hosaflook's payments to credit reporting agencies, and whether it refused to accept or apply Hosaflook's payments are material questions precluding summary judgment. Accordingly, the Court **DENIES** Ocwen's motion for summary judgment on **Counts Three** and **Four** and **DENIES** both parties' motions for summary judgment on **Count Five**.

## IV. CONCLUSION

For the reasons discussed, the Court:

37

**HOSAFLOOK V. OCWEN LOAN SERVICING, LLC**                    **1:17CV28**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 63] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 61]**

- **DENIES** the plaintiff's partial motion for summary judgment on **Counts One**, **Five**, and **Nine** (Dkt. No. 63); and

- **DENIES** the defendant's motion for summary judgment on **Counts One**, **Two**, **Three**, **Four**, **Five**, **Six**, **Seven, Eight**, and **Nine** (Dkt. No. 61).

The case will proceed to trial as scheduled on all Counts.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 17, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

38